IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VICTOR M. GARCIA,

    Petitioner,                 No. CIV S-08-2592 MCE DAD P

    vs.

MATTHEW CATE, et al.,

    Respondents.            FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on September 19, 2005 in the Sacramento County Superior Court on charges of one count of assault with a deadly weapon with malice aforethought by a prisoner serving a life sentence, and two counts of possession of a sharp instrument while confined in a penal institution. Petitioner seeks federal habeas relief on the following grounds: (1) there was insufficient evidence introduced at his trial of an intent to kill to support the jury's finding of malice aforethought with respect to the charge of assault with a deadly weapon; (2) the trial court violated his rights to a jury trial, to due process, to confront the witnesses against him, and to present a defense when it failed to allow his trial counsel and the jury to take physical possession of the weapon used in the attack; and (3) jury instruction error violated his right to due process.

1

Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

Petitioner appealed from his conviction to the California Court of Appeal for the Third Appellate District. On May 16, 2007, the Court of Appeal reversed petitioner's conviction for assault with a deadly weapon and stayed the concurrent sentence imposed on one count of possession of a sharp instrument, pursuant to Cal. Penal Code § 654. (Notice of Lodging Documents on March 20, 2009 (Doc. No. 16), Resp't's Lod. Doc. 4 (hereinafter Opinion)). In all other respects, petitioner's judgment of conviction was affirmed. (Id.) In its unpublished memorandum and opinion, the California Court of Appeal provided the following factual summary:

> Three correctional officers testified that they saw Contreras and Garcia attack another inmate in the exercise yard at Sacramento State Prison. The attack was also captured on a surveillance camera in the yard.
>
> Contreras and Garcia both stabbed the unarmed victim inmate with inmate-manufactured weapons. The attack involved direct thrusts from the side, from overhead, and from opposite angles on either side of the victim. During the attack, Contreras and Garcia each received a guard-fired, nonlethal rubber round to their backsides, but these two shots failed to end the assault. It took a tear-gas grenade to accomplish that. The attack lasted about 25 seconds.
>
> The victim incurred at least 41 puncture wounds (23 to his back, 10 to his chest, one to his lower abdomen, two to each arm, and three to his neck), and suffered two collapsed lungs.

(Opinion at 2-3.)

On June 28, 2007, petitioner filed a petition for review in the California Supreme Court. (Resp't's Lod. Doc. 5.) On August 8, 2007, the California Supreme Court summarily denied the petition for review. (Resp't's Lod. Doc. 6.)

/////

/////

2

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

3

we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claims

    A. Sufficiency of the Evidence

Petitioner's first claim is that "there was no substantial evidence of intent to kill and therefore malice because the alleged attack in the present case was 'wild and unaimed,' did not target any vital organs and involved no attack calculated to cause death." (Pet. at 8.)[1] The California Court of Appeal rejected these arguments, reasoning as follows:

> Garcia contends there is insufficient evidence to support a finding on count one (§ 4500) that the assault was done with malice aforethought. We disagree.

/////

---

[1] This court will refer to page numbers of the parties' pleadings by using the automated numbers assigned by the court's electronic filing system.

4

> Preliminarily, we note that defendants caught a break when the trial court instructed on the malice aforethought element exclusively in terms of express malice – an intent to kill. The element of malice aforethought, in the section 4500 offense, also includes implied malice – an intentional and dangerous act done with conscious disregard for human life. (People v. St. Martin (1970) 1 Cal.3d 524, 537 ["'[t]he words malice aforethought in section 4500 have the same meaning as in sections 187 [murder] and 188 [malice definition (, which specifies express and implied) ],'" quoting People v. Chacon (1968) 69 Cal.2d 765, 781.)
>
> Garcia contends the evidence is insufficient to show an intent to kill. In assessing the sufficiency of evidence in a criminal appeal, we review the entire record in the light most favorable to the judgment and ask whether a reasonable trier of fact could have found the challenged element beyond a reasonable doubt. (People v. Johnson (1980) 26 Cal.3d 557, 576.)
>
> Here, Contreras and Garcia acted in concert to stab the victim at least 41 times, including 10 times to the chest, 23 to the back, and three to the neck. The two defendants positioned themselves to direct thrusts from the side, from overhead, and from opposite angles. The two would not be deterred and continued on for about 25 seconds. Besides being punctured in vital areas, the victim was drenched from head to toe in blood and suffered two collapsed lungs. We conclude there is sufficient evidence of an intent to kill.
>
> Garcia disagrees. He turns this evidence on its head to argue that its extensiveness actually argues against an intent to kill because had there been such an intent, there would have been a killing. But under our standard of evidentiary sufficiency, reversal is unwarranted unless it clearly appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the challenged element]." (People v. Redmond (1969) 71 Cal.2d 745, 755.) Garcia's argument mistakenly inverts this standard, so that if there is any hypothesis of insufficient evidence, reversal is required.

(Opinion at 5-6.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he

5

dispositive question under <u>Jackson</u> is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" <u>Chein v. Shumsky</u>, 373 F.3d 978, 982 (9th Cir. 2004) (quoting <u>Jackson</u>, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case. <u>Id.</u> at 1275 & n.13.

Viewing the evidence in the light most favorable to the verdict, the undersigned concludes that there was sufficient evidence introduced at petitioner's trial from which a rational trier of fact could have found beyond a reasonable doubt that petitioner harbored the intent to kill when he and his co-defendant attacked the victim. The evidence, as summarized by the trial court and set forth above, fully supports the jury's finding that petitioner harbored express malice. The state courts' denial of habeas relief with respect to petitioner's insufficient evidence claim is not an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case. Accordingly, petitioner is not entitled to federal habeas relief with respect to this claim.

      B. <u>Failure to Allow Jury and Trial Counsel to Examine Weapon</u>

Petitioner's next claim is that the trial court undermined the presentation of the defense theory that "there was no intent to kill in this case" when it refused to allow the jury to examine the weapon used by petitioner and his co-defendant. (Pet. at 8.) Petitioner also complains about "the trial court's failure to allow counsel to examine the weapon allegedly used in this case so as to allow the jury to examine the weapon." (<u>Id.</u>)

The state court record reflects that outside the presence of the jury, the following colloquy occurred:

> [PETITIONER'S COUNSEL]: I want to open the Sharps tubes [which held the weapons used in the attack] as it were. There's no biohazard after a year, especially not with rubber gloves in terms of

6

>handling the weapon. I want to know if it's malleable or not malleable or relatively malleable. My understanding is that the weapon at all times was a hook weapon as opposed to an ice pick. It's not overly relevant, but it is relevant that my client didn't have access to the materials involved, etcetera, etcetera, as defense part, [sic] but simply as a matter – I don't know that – I mean, we're not going to give the weapon to the inmates. So that's not an issue. It's not particularly any sharper than the pen I have in my hand, which is in close proximity as far as the safety concern. I just want to see what the actual evidence is as opposed to have it, you know, once removed and people testifying about their opinion as it got bent in a fight or something like that.
>
>THE COURT: You want to experiment on the evidence?
>
>[PETITIONER'S COUNSEL]: No.
>
>THE COURT: What do you want to do with it?
>
>[PETITIONER'S COUNSEL]: Manipulate and touch it.
>
>THE COURT: So you want to experiment with the evidence.
>
>[PETITIONER'S COUNSEL]: I don't know that it would constitute any kind of experiment anymore than it would looking at a photograph or touching a .45 automatic if that were the weapon.

(Reporter's Transcript on Appeal (RT) at 76-77.) The trial court denied trial counsel's request to handle the evidence, ruling as follows:

>I'm going to disallow any spoliation of the evidence in this case. It is not analogous to looking at a photograph. What you're asking this Court to permit you to do, Mr. Lippsmeyer, is to change what is the evidence in this case or at least attempt to change it, and I'm not going to permit that. I don't think that's allowable under the law. I think in the exercise of my discretion, under [Cal. Evid. Code §] 352 it would be substantially more confusing to this jury than would be probative on any unarticulated issue, and so I'm going to disallow it, the experimentation, on that exhibit.

(Id. at 78.) Petitioner's counsel then made the following request: "There's a secondary motion that is that the jury not be allowed to manipulate the [Sharps] tubes then." (Id. at 78-79.) The trial court responded that the jury was "not going to open up the tubes. They're not going to touch the instrument." (Id. at 79.) Defense counsel then requested that the trial court "not allow them to have it. The tubes, unfortunately, manipulate." (Id.) The court responded that the

7

1 matter could be discussed "at the end of the case." (Id.) No further discussion of this topic

2 appears in the state court record. However, the trial court did instruct the jury that:

> You must not independently investigate the facts or the law or consider or discuss facts as to which there is no evidence. This means, for example, that you must not . . . conduct experiments.

(Clerk's Transcript on Appeal (CT) at 200.)

The California Court of Appeal rejected petitioner's argument that the trial court erred in not allowing the jury to take physical possession of the weapon used in the attack. The court reasoned as follows:

> Garcia contends the trial court unconstitutionally deprived him of his defense rights by refusing to allow the jurors to examine the weapon he allegedly used. The weapon was produced at trial and shown to the jurors. We disagree with Garcia's contention.
>
> The premise underlying this contention is that a curved weapon is less lethal than a straight one and therefore less likely to show an intent to kill. One of the correctional officer witnesses testified that Garcia's weapon was straight during the attack and that Garcia threw it to the ground just prior to being apprehended. The recovered weapon was bent.
>
> Garcia argues that "[s]imple logic, and the law as well, suggest that a person intending to kill is more likely to be successful using a straight weapon ['ice pick') as opposed to a hook or curved or bent weapon."
>
> Outside the jury's presence, Garcia's counsel asked to "[m]anipulate and touch" the weapon to ascertain its malleability. The trial court denied this request to "attempt to change" the evidence, and also ruled this experimentation would be substantially more confusing than probative under Evidence Code section 352.
>
> We conclude the trial court did not abuse its discretion or deny Garcia any constitutional defense rights.
>
> We do not share Garcia's claim of "[s]imple logic." It is not illogical to conclude that repeatedly stabbing someone with a hooked or curved sharp weapon may cause more damage than a straight ice pick.
>
> Nor does the law support Garcia. For this "point," Garcia looks to People v. Hughes (2002) 27 Cal.4th 287. Hughes involved an evidentiary issue in a death penalty trial concerning an aggravating

8

>factor involving the defendant's possession there of a sharpened instrument. At most for Garcia's purposes, the <u>Hughes</u> court concluded that a "long" (four-inch) "slightly bent but straightened, hard, sharp object," "sharp-pointed pin" was not inherently a deadly weapon. (<u>Hughes</u>, <u>supra</u>, 27 Cal.4th at pp. 381-383.) It depended upon how it was used. As we have seen, Garcia sure used his weapon as a weapon, which was also about four inches in length.
>
>Finally, Garcia's counsel essentially asked the court to allow him, as well as the jurors, to experiment with the weapon. The jury was shown the weapon. Such experimentation would have been confusing and likely inaccurate in the context here of repetitive stabbing.

(Opinion at 6-8.)

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967). <u>See</u> also <u>Crane v. Kentucky</u>, 476 U.S. 683, 687, 690 (1986); <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984); <u>Webb v. Texas</u>, 409 U.S. 95, 98 (1972); <u>Moses v. Payne</u>, 555 F.3d 742, 757 (9th Cir. 2009). However, the constitutional right to present a defense is not absolute. <u>Alcala v. Woodford</u>, 334 F.3d 862, 877 (9th Cir. 2003). "Even relevant and reliable evidence can be excluded when the state interest is strong." <u>Perry v. Rushen</u>, 713 F.2d 1447, 1450 (9th Cir. 1983). A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. <u>Drayden v. White</u>, 232 F.3d 704, 710 (9th Cir. 2000); <u>Spivey v. Rocha</u>, 194 F.3d 971, 977-78 (9th Cir. 1999); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991). A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998). <u>See</u> also <u>Crane</u>, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); <u>Greene v. Lambert</u>, 288 F.3d 1081, 1090

9

(9th Cir. 2002). Further, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

Petitioner is claiming, in essence, that the trial court violated his right to due process by not allowing the weapon used in the attack to be physically manipulated by the jury during deliberations. He also appears to be claiming the trial court violated his right to present a defense when it precluded his trial counsel and the jury from examining the evidence, because such an examination might have demonstrated that the weapon had a curved point even before the attack, thereby supporting the defense argument that petitioner did not harbor the intent to kill. Petitioner is not entitled to federal habeas relief on the basis of these claims.

There is no evidence that examination of the weapon by either petitioner's trial counsel or the jury would have supported petitioner's theory that he lacked the intent to kill, even if the weapon was bent at the end or did not appear to be malleable. As noted by respondent, the shape of the weapon could have changed during the attack itself. Further, petitioner's argument that argument of his use of a sharp weapon with a curved end would have convinced the jury he did not intend to kill the victim is highly dubious, given the evidence that he and his co-defendant stabbed the victim 41 times and refused to stop even after being shot with a "rubber round" by prison guards. Petitioner has failed to show that the trial court's rulings denying his counsel and the jury the opportunity to take possession of the evidence, and possibly manipulate the weapon contained in the Sharps tube, rendered his trial so fundamentally unfair as to violate due process. He has also failed to show that the state court decision rejecting these evidentiary claims was contrary to or an unreasonable application of federal law. Accordingly, petitioner is not entitled to federal habeas relief in this regard.

/////

C. <u>Jury Instruction Error</u>

Petitioner claims that the trial court violated his right to due process when it instructed the jury with CALJIC No. 17.20. (Pet. at 8.) He argues,

> The trial court's charge allowed the jury to substitute a knowledge finding for a finding that petitioner directly personally performed the act causing the victim's injuries. Thus, nothing in the offending charge required the jury to assess petitioner's contribution to the multiple blows for the purpose of determining whether it was more that [sic] a trivial or insubstantial factor in producing the victim's injury.

(Id.) In other words, petitioner argues that the giving of CALJIC No. 17.20 allowed the jury to find him guilty of inflicting great bodily injury based on his knowledge of the conduct of others, rather than on his own use of force.

Petitioner was charged with violating California Penal Code § 12022.7(a), which imposes an additional consecutive three year prison term on a person who "personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony." (CT at 175.) Petitioner's jury was instructed on this enhancement allegation with CALJIC No. 17.20, which provides, in relevant part, as follows:

> When a person participates in a group assault with a deadly weapon and it is not possible to determine which assailant inflicted a particular injury, he may be found to have personally inflicted great bodily injury upon the victim if 1) the application of unlawful physical force upon the victim was of such a nature that, by itself, it could have caused the great bodily injury suffered by the victim; or 2) that at the time the defendant personally applied unlawful physical force to the victim, the defendant knew that other persons, as part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim and the defendant then knew, or reasonably should have known, that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim.

(Id. at 326.) Petitioner appears to be arguing that the first part of CALJIC No. 17.20 improperly allowed the jury to find him guilty of assault on the victim even if he did not personally inflict any injury. He also challenges the second part of the instruction, to the extent that it allowed the jury to convict him based only on his knowledge of the action of others and not on his own

11

actions, on the grounds that it violated his federal constitutional rights.

On appeal, petitioner's co-defendant argued that "the second alternative of CALJIC No. 17.20 (which sanctions a finding of personal infliction of great bodily injury in the group assault – cumulative injury context) is legally improper." (Opinion at 2.) The California Court of Appeal rejected this argument, reasoning as follows:

> The second alternative of CALJIC No. 17.20 provides that a person who participates in a group assault with a deadly weapon may be found to have personally inflicted great bodily injury if he personally applied physical force and knew, or reasonably should have known, that the cumulative effect of all the physical force would result in great bodily injury. (CALJIC No. 17.20.)
>
> The state Supreme Court, in Modiri, recently approved this instruction, because it "makes clear that the physical force personally applied by the defendant must have been sufficient to produce great bodily injury either (1) by itself, or (2) in combination with other assailants." (Modiri, supra, 39 Cal.4th at p. 494, see also p. 486.)
>
> Consequently, under Modiri, the second alternative of CALJIC No. 17.20 was properly given here, and Contreras acknowledges that in his reply brief.

(Id. at 3-4.).

In the case relied upon by the state appellate court in reaching this conclusion, the California Supreme Court upheld the constitutionality of CALJIC No. 17.20, reasoning as follows:

> Defendant starts with the instruction's first group beating theory. As noted, it involves "the application of unlawful physical force upon the victim" that "*could have caused*" great bodily injury "by itself." (CALJIC No. 17.20, italics added.) Defendant claims the italicized phrase invited speculation as to whether he personally inflicted harm, and permitted a section 1192.7(c)(8) finding based solely on injuries caused by other assailants in the group.
>
> Read in context, however, the challenged language "is not reasonably susceptible" to this interpretation. (People v. Jackson (1996) 13 Cal.4th 1164, 1221-1222, fn. 11, 56 Cal. Rptr.2d 49, 920 P.2d 1254 [instruction on personal firearm use adequately advised jury to rely on defendant's own acts].) In deciding whether the section 1192.7(c)(8) allegation is true beyond a reasonable doubt, the jury is told that the defendant must have (1) participated in the

group beating and (2) applied physical force directly to the victim, who (3) suffered great bodily injury as a result. As we have seen, the reference to grievous harm that the defendant "could have caused" on his own simply embraces the scenarios in which it is impossible to know which assailant caused a particular injury. By implication, this part of the instruction preserves the necessary causal link between the defendant's use of force and the victim's injuries by foreclosing a section 1192.7(c)(8) finding where the defendant could not have personally inflicted the requisite harm or contributed to it at all. No reasonable juror would have viewed the challenged language in the manner defendant suggests. (footnote omitted.)

Defendant also parses the second group beating theory. It allows the jury to sustain a section 1192.7(c)(8) allegation if the defendant "personally applied unlawful physical force" to the victim while he "*knew*" others were applying similar force at the same time, and while he "*knew, or reasonably should have known*, that the cumulative effect of all [such] force would result in great bodily injury." (CALJIC No. 17.20, italics added.) According to defendant, the italicized language should not have appeared in the instruction, because it substituted his knowledge of the force applied by others for the injury that he was personally required to inflict. He claims this approach allowed "vicarious" liability under section 1192.7(c)(8) in violation of controlling law.

The asserted error did not occur. We have seen that section 1192.7(c)(8) requires the defendant to personally inflict, or contribute to the infliction of, great bodily harm while participating in a group attack. (See Dominick, supra, 182 Cal. App.3d 1174, 1210-1211, 227 Cal. Rptr. 849.) The second group beating theory in CALJIC No. 17.20 follows this principle by requiring the defendant to apply physical force directly to the victim to such a significant degree that he adds to the "cumulative" injurious effect. Contrary to what defendant claims, this language does not define the defendant's personal infliction of great bodily harm primarily or solely in terms of the harmful acts that others in the group commit.

Moreover, we have said that section 1192.7(c)(8) simply requires an intent to do the act the statute proscribes. (People v. Sargent (1999) 19 Cal.4th 1206, 1222, 81 Cal. Rptr.2d 835, 970 P.2d 409 [describing § 1192.7(c)(8) as "general intent" statute], citing People v. Gonzales, supra, 29 Cal. App.4th 1684, 1695-1698, 35 Cal. Rptr.2d 450.) (footnote omitted.) Instead of supplanting the personal-infliction requirement, the reference to what the defendant knew or should have known during the attack arguably imposes an additional evidentiary burden on the prosecution. We see no basis on which defendant can complain.

People v. Modiri, 39 Cal.4th 481, 500-01 (2006).

13

A state court's determination of whether a requested instruction is allowed under state law cannot form the basis for federal habeas relief. Estelle, 502 U.S. at 67-68. See also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). Nevertheless, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981) (quoting Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)). See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process"). The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome. See Leavitt v. Arave, 383 F.3d 809, 834 (9th Cir. 2004); Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002).

Petitioner has failed to show that the giving of CALJIC No. 17.20, under the circumstances of this case, rendered his trial fundamentally unfair or that the state courts' rejection of his argument under California law was incorrect or improper. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); Estelle, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or application of state law); Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes"). There is no dispute here that petitioner attacked the victim himself. Therefore, there is no possibility the jury found him guilty of assault on the victim in the absence of any personal involvement on his part in the attack. Finally, similar challenges to the use of CALJIC No. 17.20 have been rejected by

numerous district courts.  See Robledo v. Kirkland, NO. CV 05-3651-CJC (CW), 2010 WL 960137, at **15-16 (C.D. Cal. Feb. 8, 2010); Solis v. Felker, No. CV 06-6787-AHM (AGR), 2009 WL 4282030, at **4-5 (C.D. Cal. Nov. 25, 2009); Large v. Scribner, No. CIV-S-05-1093 JAM KJM P, 2008 WL 4218486, at *5 (E.D. C al. Sept. 5, 2008); Perez v. Butler, No. C 02-2097 JSW, 2005 WL 2437036, at **6-7 (N.D. Cal. Oct. 03, 2005).  Accordingly, petitioner is not entitled to relief with respect to this jury instruction error claim.

      D.  Evidentiary Hearing

      Petitioner requests an evidentiary hearing on "all claims in the petition." (Traverse at 2.)  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense;

28 U.S.C. § 2254(e)(2).

      Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  A federal court must take into account the AEDPA's deferential  standard of review in deciding whether an

evidentiary hearing is appropriate in a given case. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). A petitioner must also "allege[] facts that, if proved, would entitle him to relief." West v. Ryan, ___F.3d ___, ___, 2010 WL 2303337, at *6 (9th Cir. June 10, 2010). See also Schell v. Witek, 218 F.3d 1017, 1028 (9th Cir. 2000).

The court concludes that no additional factual supplementation is necessary and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. Petitioner has failed to raise factual disputes that, if decided in his favor, would present a colorable claim for federal habeas relief. West, 2010 WL 2303337, at *7. In addition, for the reasons described above, petitioner has failed to demonstrate that in rejecting his claims the state courts made an unreasonable determination of the facts under § 2254(d)(2). See Schriro, 550 U.S. at 481. Accordingly, an evidentiary hearing is not necessary or appropriate in this case.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules

/////

/////

Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: July 16, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
garcia2592.hc